_____

No. 94-2551

_____

United States of America,       *
                             *
           Appellee,      *
                             * Appeal from the United States
    v.                  * District Court for the
                             * District of Nebraska
Suzanne Wonderly,         *
                             *
          Appellant.     *

_____

Submitted:  December 13, 1994

Filed:  December 5, 1995
_____

Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit
    Judge, and SHAW,[*] District Judge.
_____

McMILLIAN, Circuit Judge.


    Suzanne Wonderly appeals from a final judgment entered in the United
States District Court[1] for the District of Nebraska, upon a jury verdict
finding her guilty on one count of conspiracy to commit wire fraud, 18
U.S.C. § 371, and four counts of wire fraud, 18 U.S.C. § 1343.  The
district court sentenced defendant to thirty-three months imprisonment,
three years supervised release, a special assessment of $250, and payment
of restitution in the amount of $202,683.  For reversal, defendant argues
that (1) the evidence was insufficient as a matter of law to support the
jury's

_____

    *The Honorable Charles A. Shaw, United States
    District Judge for the Eastern District of
    Missouri, sitting by designation.

    [1]The Honorable Lyle E. Strom, United States District Judge for
the District of Nebraska.

verdict; (2) the district court abused its discretion in admitting Rule 404(b) evidence at trial; (3) the district court committed plain error in making certain statements to the jury concerning scheduling matters; and (4) her sentence under the guidelines was based upon clearly erroneous findings by the district court. For the reasons discussed below, we affirm.

## Background

Defendant started a business called Executive Finance & Leasing which purported to provide services to persons seeking commercial financing. According to the government's evidence at trial, during the late 1980s, defendant used false documentation and oral misrepresentations to persuade five individuals to wire her a total of $320,000, which she said she would use to purchase and resell discounted prime bank notes, or to engage in letter of credit transactions, at substantial profits to the investors. Defendant promised these individuals that their funds would not be lost and that, in fact, their investments would generate millions of dollars -- in some instances, doubling in as little as seventy-two hours. In persuading them to invest their money, defendant represented that she had a 100% success rate investing funds for prior clients. Each time she targeted one of the investors, she claimed to have a specific investment opportunity for which time was of the essence. After receiving their money, defendant would provide them with fictitious reports regarding the progress of their investments, holding them at bay for weeks or sometimes months. Oftentimes the investors received communications from individuals other than defendant, including a man named Allen Bestmann, regarding the status of their investments. After a while, however, the investors would find it difficult, if not impossible, to reach defendant. On a few occasions, some of the funds were partially returned. However, the majority of the money was never seen again by the investors.

On June 18, 1992, defendant and Bestmann were indicted in the District of Nebraska on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371 and five separate counts of wire fraud in violation of 18 U.S.C. § 1343.  Bestmann pleaded guilty to the conspiracy charge and, upon the government's motion, the remaining counts against him were dismissed.  Defendant entered pleas of not guilty to all counts.  Her case proceeded to trial on January 24, 1994.  At trial, defendant testified in her own defense.  She denied having made the representations described by the government's witnesses, but did admit to having very little actual experience with the type of investments she had purportedly discussed with the investors.  She essentially portrayed her role as that of an intermediary between Bestmann and the investors.  She maintained that she had always believed her representations to be truthful and always acted in good faith.  At the close of evidence, upon the government's motion, the district court dismissed Count VI of the indictment.  The case was submitted to the jury on February 3, 1994.  The next day, February 4, 1994, the jury returned a verdict of guilty on the five remaining counts.

In calculating defendant's total offense level under the sentencing guidelines, the district court found, among other things, that the offense involved more than minimal planning or a scheme to defraud more than one victim, U.S.S.G. § 2F1.1(b)(2); that defendant was an organizer, leader, manager, or supervisor of the criminal conspiracy, id. § 3B1.1(c); that she had obstructed justice by perjuring herself at trial, id. § 3C1.1; and that she had not accepted responsibility within the meaning of § 3E1.1. Defendant was sentenced under the guidelines to thirty-three months imprisonment, three years supervised release, a special assessment of $250.00, and payment of restitution in the amount of $202,683.  This appeal followed.

-3-

**Discussion**

Sufficiency of the evidence

Defendant first argues that the evidence was insufficient as a matter of law to support the jury's verdict. She maintains that the jury could not infer from the evidence that she intended to defraud the investors or that she entered into an agreement to commit wire fraud. At best, she argues, the evidence merely established that she acted as an intermediary for Bestmann.

In reviewing the sufficiency of the evidence, this court must view the evidence in the light most favorable to the government, resolving all conflicts in the government's favor. United States v. Clausen, 792 F.2d 102, 105 (8th Cir.), cert. denied, 479 U.S. 858 (1986). "Intent to defraud need not be shown by direct evidence; rather, it may be inferred from all the facts and circumstances surrounding the defendant's actions." Id. Upon review of the evidence, including the testimony of the government's witnesses and defendant herself, we hold that the jury could reasonably have inferred both that defendant had intended to defraud her investors and that an agreement existed among defendant and others, including Bestmann, to carry out a fraudulent scheme. Accordingly, we hold that the evidence was sufficient to support the jury's verdict.

Rule 404(b) evidence

Defendant next argues that the district court abused its discretion in admitting evidence, pursuant to Fed. R. Evid. 404(b), of other wrongful acts committed by defendant. The evidence challenged by defendant includes the testimony of two individuals who invested a total of $130,000 through defendant. These

-4-

investments were made after the dates charged in the indictment.[2]  The two witnesses testified that defendant persuaded them to invest substantial sums of money by claiming to have specific opportunities to invest their funds in transactions involving prime bank notes and letters of credit, which would yield tremendous short-term profits.  In each instance, they testified, they never saw their money again.

Prior to trial, the district court held an evidentiary hearing on defendant's motion in limine seeking to exclude evidence of other wrongful acts.  Upon review of the government's proffer of Rule 404(b) evidence, the district court held that the evidence now being challenged on appeal was admissible to prove absence of mistake or accident because defendant's anticipated defense theory was that she acted in good faith as an intermediary for Bestmann.  Defendant now argues, however, that her defense at trial was based upon a denial of the acts charged in the indictment and, thus, the issues of mistake and accident were not relevant to her guilt or innocence.  She further argues that, even if the evidence were relevant, the unfair prejudice and confusion of issues created by the evidence substantially outweighed its probative value.  Fed. R. Evid. 403.  We disagree.

Upon review of the evidence presented at trial, including defendant's own testimony, we note that defendant's theory of defense was not merely a denial of the conduct alleged by the government but was primarily a good faith defense.  See, e.g., transcript at 890.  For example, she stated that she never intended for the investors to lose their money.  Id. at 864-65.  She also

_____

[2]The fact that the challenged testimony refers to defendants' actions after the events that are the subject of the indictment does not alone render the evidence inadmissible.  United States v. Riley, 657 F.2d 1377, 1388 (8th Cir. 1981) (citing McConkey v. United States, 444 F.2d 788, 790 (8th Cir.) (per curiam), cert. denied, 404 U.S. 885 (1971)).

-5-

maintained that the representations she made to investors originated with Bestmann, that she assumed those representations were truthful, and that she believed the operation was legitimate.  <u>Id.</u> at 822, 825-29.  In other words, she described herself as the innocent messenger for Bestmann.  The challenged Rule 404(b) evidence was therefore relevant to show absence of mistake because, even after the five investors lost virtually all of their money, defendant continued to engage in the same practice of seeking out investors and persuading them to turn over tens of thousands of dollars upon the promise of high-yield investment opportunities which she claimed were virtually risk-free.  These subsequent acts belie her claim that she merely spoke for Bestmann and that she believed she was being truthful when she claimed a 100% success rate and virtually no risk in the investment opportunities she was presenting.  Accordingly, we hold that the district court did not abuse its discretion in admitting the Rule 404(b) evidence.

<u>Comments to the jury</u>

Defendant next argues that her due process rights were violated as a result of certain comments made by the district court to the jury concerning scheduling matters.  The comments to which defendant objects began with the district court's inquiry as to whether it would be a problem for members of the jury to begin the proceedings each day at 8:30 a.m.  The court stated:

> Would it be alright if we started at 8:30 next Monday morning?  Would that create a problem for anybody?
>
> We may start at 8:30 every morning we can.

The court then continued:

> One of the reasons that I have to [interrupt] our days once in a while, under the present budget cutting procedures in Washington, the United States Marshal's

Service budget has been cut about 40%, which is, as you can imagine, very substantial.

That means that if I tried to start something in a criminal matter with a defendant who is in custody, the marshal's service has to pay overtime to get that person here before 9:00 o'clock in the morning.

And in order to avoid putting the burden on the marshal's service, if a person is in custody, I try to schedule it over the noon hour, although many of my noon hours are filled with other commitments, or I have to do it at 9:00 o'clock in the morning. Next week we will try to start at 8:30 and I will keep you advised.

We may shorten our noon hours a couple of days in an effort to try to move along a little more rapidly.

Transcript at 399.

Defendant argues that prejudicial error occurred as a result of these comments because the jury could have inferred that defendant was in custody when, in fact, she had been released on her own recognizance; alternatively, defendant contends, the jury could have inferred that defendant was serving a sentence for another crime. In light of the district court's failure to give any curative instructions, defendant argues, she is entitled to a new trial.

In response, the government notes that defendant failed to object to the district court's comments in a timely manner and thus the standard of review on appeal is plain error. The government argues that the district court's comments constituted neither error nor plain error. The government suggests that the district court's comments quite clearly indicated that, due to budgetary problems affecting the United States Marshal's Service, it would generally not be possible for criminal defendants in custody to arrive at the courthouse before 9:00 a.m.; as a consequence, any matters involving such defendants which the court needed to entertain would be scheduled either over the noon hour or at 9:00 a.m.; if the

-7-

court were to have such a 9:00 a.m. hearing, then, on that day, defendant's trial would begin afterward.  The government thus argues that it would be logically inconsistent for the jury to have inferred that defendant was in custody because the court had just indicated its intention to start the trial proceedings at 8:30 a.m. each day, whereas those defendants who were in custody could not be brought to the courthouse until 9:00 a.m.

We agree with the government that the standard of review on this issue is plain error.  Upon review, we hold that the district court's statements did not prejudice defendant in any way.  Accordingly, we hold that the district court did not commit error, much less plain error, as a result of its comments to the jury.

Sentencing issues

Defendant also raises several sentencing issues on appeal.  She claims that the district court erred in finding that (1) the offense involved more than minimal planning or a scheme to defraud more than one victim, U.S.S.G. § 2F1.1(b)(2); (2) defendant was an organizer, leader, manager, or supervisor of the criminal conspiracy, id. § 3B1.1(c); (3) she had obstructed justice by perjuring herself at trial, id. § 3C1.1, and (4) she had not accepted responsibility for her unlawful conduct and therefore was not entitled to the applicable downward adjustment, id. § 3E1.1.  As to all of these sentencing determinations, defendant maintains that the district court's relevant findings are not supported by the record and are clearly erroneous.  As to her perjury claim, defendant additionally argues that the enhancement is invalid under United States v. Ransom, 990 F.2d 1011, 1014 (8th Cir. 1993), because "the court failed to make the necessary findings that she committed perjury, failed to address one of the government's proposed bases for the finding of perjury and placed undue emphasis

on the jury's disbelief of [defendant's] testimony."  Brief for Appellant at 26-27.[3]

In response, the government first argues that, as a result of defendant's failure to object to the two-level increase under § 2F1.1(b)(2), as recommended in the presentence investigation report, the district court's findings that the offense involved more than minimal planning and that it involved a scheme to defraud more than one victim may not be reversed "unless a gross miscarriage of justice would otherwise result."  Brief for Appellee at 38-39 (citing United States v. Williams, 994 F.2d 1287, 1294 (8th Cir. 1993)).  In any case, the government maintains, the district court's finding that the offense involved more than minimal planning or more than one victim is well supported by the record.  As to defendant's arguments addressing her role in the offense and obstruction of justice, the government maintains that the district court's relevant findings are also well supported in the record and not clearly erroneous.  On the perjury finding, the government notes that, while the Supreme Court and this court have expressed a preference for specific findings of false statements, the absence of such specific findings does not necessarily render the enhancement invalid, provided the district court sufficiently indicated that it considered the trial testimony in light of the factual predicates for a perjury finding.  Brief for Appellee at 44-45 (citing United States v. Dunnigan, 507 U.S. 87, __, 113 S. Ct. 1111, 1117 (1993); United States v. Turk, 21 F.3d 309, 313

---

[3]United States v. Ransom, 990 F.2d 1011 (8th Cir. 1993), is distinguishable from the present case because, in that case, the district court admitted at sentencing that it was not familiar with the transcript of the grand jury testimony which was the basis of its perjury finding.  In reversing the application of the enhancement for obstruction of justice, this court noted that "the [district court's] lack of familiarity with the transcript is especially important in this case, given that no trial was conducted which would have provided the judge with an opportunity to gauge the defendant's actions and testimony while on the witness stand."  Id. at 1014.

(8th Cir. 1994)). As to the finding that defendant was an organizer, supervisor, manager, or leader, the government emphasizes that, from the victims' perspective, defendant was the key person involved in the conspiracy -- she was the one who solicited their business and she made the false representations that convinced them to turn over their funds. Even assuming that she later withdrew from the transactions, this fact does not diminish her leadership role in the conspiracy. Brief for Appellee at 41-42 (citing United States v. Pierce, 907 F.2d 56, 57 (8th Cir. 1990)). Finally, as to the district court's failure to find that defendant had accepted responsibility, the government notes that the standard of review on appeal is one of particularly great deference and this court will not reverse the sentencing court's determination "unless it is without foundation." Brief for Appellee at 48 (citing United States v. Big Crow, 898 F.2d 1326, 1330 (8th Cir. 1990) (quoting U.S.S.G. § 3E1.1 commentary, application note 5)). In any case, the government argues, a finding that defendant accepted responsibility for her fraudulent behavior would be wholly inconsistent with the evidence at trial, the procedural history of this case, and defendant's continued insistence upon her innocence.

Upon careful review of the record in this case and the arguments on appeal, we hold that the factual findings challenged by defendant are all well supported by the record and not clearly erroneous. Accordingly, we hold that there is no basis for finding reversible error in the sentencing process.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed. See 8th Cir. R. 47B.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.